E-FILED
Wednesday, 23 October, 2019  09:22:53 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| **OBIORA ONYEMELUKWE,**<br><br> Plaintiff,<br><br>v.<br><br>**CATERPILLAR, INC.,**<br><br> Defendant. | Case No. 18-1119-MMM |

## MEMORANDUM OPINION AND ORDER

Presently before the Court is Defendant's Motion for Summary Judgment (D. 37[1]).  For the reasons stated herein, Defendant's Motion is GRANTED.  The Clerk of Court is instructed to close this case.

## JURISDICTION

The Court has federal question jurisdiction over this matter under 28 U.S.C. § 1331, as Plaintiff's claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.  It also has diversity jurisdiction under 28 U.S.C. § 1332(a)(1), as Plaintiff is a citizen of Massachusetts, Defendant is incorporated under the laws of Delaware and has its principal place of business in Illinois, and the amount in controversy exceeds $75,000.  Venue in this Court is appropriate under 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to the claims occurred in Peoria, Illinois.

---

[1] Citations to the docket are abbreviated as (D. _ .)

# BACKGROUND[2]

Plaintiff Obiora Onyemelukwe began working for Defendant Caterpillar Inc. as a Pre-Field Part Service Operations Representative ("PSOR"), in its Global Marketing Talent Division on September 11, 2013. (D. 38-2 at 3; 58 at 19.) Plaintiff is a black male who was born in Nigeria and moved to the United States in 1999. (D. 58, ¶ 2 at 91.) Employment as a Pre-Field PSOR entailed completion of an initial 14-week corporate training class and one to six-month field rotations. *Id.*, ¶¶ 8, 11 at 20. The purpose of the rotations was for the Pre-Field PSOR to learn the people, processes, and products necessary for successful placement into a long-term PSOR position. *Id.*, ¶ 4 at 25. PSORs served as liaisons between Defendant and third-party dealerships, marketing Defendant's products and services to those dealerships. *Id.*, ¶ 5 at 19.

Plaintiff completed the corporate training class in December 2013, and moved on to his rotation assignments. *Id.*, ¶ 11 at 20. In December 2014, he interviewed for two open PSOR positions. *Id.*, ¶ 18 at 21. Although Plaintiff received sufficient marks on performance reviews up to that point (D. 65 at 2-5; 66 at 3-8), two of the three PSOR interviewers testified Plaintiff either performed poorly in the interview, or that the other candidate's interview went better. (D. 38-7 at 2; 38-8 at 3.) In early 2015, Plaintiff had another interview for a PSOR position in Seattle. (D. 58, ¶ 23 at 35.) He was not selected for that position either, with Plaintiff conceding the hiring manager "selected a candidate with more experience than any Pre[-]field PSOR" for the position. *Id.*

In April 2015, Plaintiff's work performance took a hit when his supervisor was notified Plaintiff had attempted to use his corporate credit card for a large personal expense. *Id.*, ¶ 26 at 23. The notification resulted in Plaintiff admitting he had made prior unauthorized personal

---

[2] To the extent possible, the information in the Background section is taken in the light most favorable to Plaintiff.

charges to his corporate card. *Id.*, ¶ 30 at 24. What turned out to be extensive misuse of his corporate card resulted in a lingering cloud of suspicion over Plaintiff's performance and trustworthiness thereafter. (D. 65 at 17.[3]) It also resulted in close scrutiny of Plaintiff's subsequent expense reporting (D. 60, p. 168 at 37) and the implementation of the first of two Employment Action Plans ("EAP"s) (D. 58, ¶ 30 at 24).

In August 2015, after multiple disagreements between Plaintiff and his supervisor, and a sinking premonition that things were not going to end well for him (D. 65 at 39[4]), Plaintiff contacted Defendant's Office of Business Practices ("OBP") alleging his supervisor was planning to terminate him on a false allegation regarding his meal receipts. (D. 58, ¶ 51 at 55.) An internal investigation ensued, a member of the OBP advocated on his behalf, and Plaintiff was placed into a revised second EAP. *Id.*, ¶ 56 at 59-60. Although the OBP had been his advocate, after the implementation of his second EAP, Plaintiff believed his days with Defendant were numbered. (D. 66 at 28.[5]) The final straw came when a PSOR informed Plaintiff's supervisor that Plaintiff had skipped a pre-arranged customer tour at one of Defendant's facilities (D. 38-6 at 15) and had arrived ten minutes late for a class (*id.* at 13). Plaintiff had failed to inform his supervisor he attended a Donuts and Dad's Day event at his daughter's school (D. 66 at 28[6]), even though his supervisor was aware of his attendance at the event and had asked Plaintiff his reason for missing the tour (*id.*).

---

[3] Plaintiff concedes, "I can't help but think I am now a target and nothing I do would make sense to [supervisor] since the last [c]redit [c]ard misuse incident."
[4] Plaintiff states, "As it sits right now, no hiring District Manager with knowledge of [his second EAP] would consider me as a viable candidate for the field[.]"
[5] Plaintiff concedes, "It became apparent to plaintiff that [his supervisor] was setting him up for termination based on the trumped up meal issue."
[6] Plaintiff concedes, "A week after the class . . . I told [his supervisor] of the events of the prior week and that I attended the training class. She asked me if I attended all the classes I said yes I did except for the facility tour. She asked why and I told her I had been on the tour twice before and need[ed] time to prepare for the book review. At this point, I forgot the detail that I used part of the time at my daughter's school."

On September 25, 2015, Defendant terminated Plaintiff's employment. (D. 58, ¶ 79 at 81.) The reason for his termination: dishonesty. (D. 38-1, p. 345 at 65.)

## PROCEDURAL HISTORY

On November 9, 2017, Plaintiff filed his complaint in the United States District Court for the District of Massachusetts. (D. 1.) On March 20, 2018, Defendant filed its answer. (D. 19.) Plaintiff's claim was transferred to this Court on March 21, 2018. (D. 22.) On June 21, 2019, Defendant filed its Motion for Summary Judgment (D. 37[7]), and on August 28, 2019, Plaintiff filed his Amended Response (D. 58[8]). On September 26, 2019, Defendant filed its Reply. (D. 68[9]). This Order follows.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). "In deciding motions for summary judgment, courts must consider the evidence as a whole," *de Lima Silva v. Dep't of Corrs.*, 917 F.3d 546, 559 (7th Cir. 2019), and "view[ ] the record and all reasonable inferences . . . drawn from it in the light most favorable to the nonmoving party," *Laborers' Pension Fund v. W.R. Weis Co., Inc.*, 879 F.3d 760, 766 (7th Cir. 2018). However, the court will not draw inferences that are "supported by only speculation or conjecture," *Argyropoulos v. City of Alton*, 539 F.3d 724, 732

---

[7] Hereinafter referred to as "MSJ."
[8] Hereinafter referred to as "Resp.".
[9] Hereinafter referred to as "Reply."

(7th Cir. 2008), and "[c]onclusory allegations alone cannot defeat a motion for summary judgment." *Thomas v. Christ Hosp. & Med. Ctr.*, 328 F.3d 890, 892 (7th Cir. 2003).

To avoid summary judgment, the nonmoving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. "It is not the role of the [c]ourt to scour the record in search of evidence to defeat a motion for summary judgment; instead, the nonmoving party bears the responsibility of identifying evidence to defeat summary judgment." *Aberman v. Bd. of Educ. of City of Chi.*, 242 F. Supp. 3d 672, 685 (N.D. Ill. 2017) (citing *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008)). Summary judgment is proper if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Ellis v. CCA of Tenn. LLC*, 650 F.3d 640, 646 (7th Cir. 2011). The "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson*, 477 U.S. at 252.

**DISCUSSION**

As a preliminary matter, the Court finds Plaintiff introduces a large number of unsupported facts in his response to Defendant's summary judgment motion. For example, in Plaintiff's brief he attempts to refute material facts with deposition testimony that neither party included with their briefs. (*See* Resp., ¶ 4 at 26.) The evidence Plaintiff does reference often fails to directly follow the proposition it supports (*id.*, ¶ 14 at 30-31), or fails to support the proposition at all (*id.*, ¶ 22 at 35). Even worse, Plaintiff often includes assertions that lack any supporting documentation whatever. *Id.*, ¶ 10 at 27. Finally, Plaintiff cites portions of the record that purportedly support

5

his assertions, but the assertions themselves and the evidence on which they are based, only address inconsequential tangents of the material facts they are meant to dispute. *Id.*, ¶ 33 at 37; ¶ 34 at 38.

Rule 56 of the Federal Rules of Civil Procedure instructs:

> "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record," or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact . . . . If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]"

FED. R. CIV. P. 56(c)(1), (e)(2). To the extent Plaintiff introduces unsupported facts in his response, or includes facts to which he fails to provide documentary substantiation, the Court considers the facts undisputed for the purposes of its analysis. *See Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918 (7th Cir. 1994) (affirming decision of district court which assumed the facts as claimed and supported by admissible evidence by the moving party were admitted to exist without controversy); *Thomas v. Kroger*, No. 13-CV-00588, 2014 WL 555086, at *1 (S.D. Ind. Feb. 12, 2014) ("Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment.").

Plaintiff has identified only three claims for employment discrimination that he maintains through the course of this litigation. Although Defendant identifies its failure to promote Plaintiff as an adverse employment action and gives the issue significant attention in its Motion (*see* MSJ at 33-43), Plaintiff waives this claim, as he fails to include the necessary argumentation and factual support in his brief to maintain it (Resp. at 93-108). *G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court. That is true whether it is an affirmative argument in support of

a motion to dismiss or an argument establishing that dismissal is inappropriate."). The argument section of Plaintiff's response is replete with reference to unlawful termination, but it fails to address a claim for failure to promote. Thus, his surviving claims, all violations of the Civil Rights Act of 1964, include: (i) disparate treatment via unlawful termination; (ii) harassment; and (iii) retaliation. The Court addresses each claim separately and in the order in which it appears in Defendant's Motion.

## I. Disparate Treatment

The crux of Plaintiff's discrimination claim is that he was unlawfully terminated by Defendant because of his race and national origin. (D. 1; Resp. at 93-105.) Under Title VII, it is unlawful for an employer to "discriminate against any individual . . . because of such individual's race . . . or national origin." 42 U.S.C. § 2000e-2(a)(1). Plaintiff utilizes the *McDonnell Douglas* burden-shifting framework to demonstrate he was the subject of unlawful discrimination. In so doing, to defeat summary judgment Plaintiff must set forth evidence that: (i) he is a member of a protected class; (ii) his job performance met his employer's legitimate expectations; (iii) he suffered an adverse employment action; and (iv) another similarly situated individual who was not in the protected class was treated more favorably. *McKinney v. Office of Sheriff of Whitley Cty.*, 866 F.3d 803, 807 (7th Cir. 2017). The failure to satisfy any one of these elements is fatal to Plaintiff's claim. *See Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir. 2008) (affirming district court's dismissal of discrimination claim because the plaintiff was unable to meet either the second or fourth prongs of the *McDonnell Douglas* test).

Here, Defendant concedes that Plaintiff is a member of a protected class. (MSJ, ¶ 2 at 4; 32.) It also concedes Plaintiff suffered an adverse employment action, namely, termination. *Id.*, ¶ 79 at 27. However, Defendant argues Plaintiff's disparate treatment claim must be denied, as he

fails to demonstrate he was meeting its reasonable expectations and that similarly situated employees outside of his protected class were treated more favorably. *Id.* at 33-37. Defendant adds that it had legitimate non-discriminatory reasons for Plaintiff's termination and that Plaintiff fails to demonstrate its decision was pretextual. *Id.* at 37-39.

The Court finds Plaintiff fails to satisfy either the second or fourth prongs of the *McDonnell Douglas* framework and therefore fails to proffer sufficient evidence for a reasonable factfinder to conclude his race or national origin caused his discharge. *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) ("[The] legal standard . . . is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, . . . or other proscribed factor caused the discharge."). Accordingly, his discrimination claim based on disparate treatment fails.

### A. Plaintiff Fails to Demonstrate Meeting Legitimate Expectations

As it concerns Plaintiff's job performance, despite some evidence demonstrating positive feedback at the beginning of his tenure (D. 38-2 at 5-8, 12-15, 17-21), Plaintiff fails to demonstrate he was meeting his employer's legitimate expectations at the time of his termination. To his detriment, the record contains ample undisputed evidence of concerns with his performance. Plaintiff admits he was repeatedly told he needed to improve his communication skills and that he was too detailed during presentations. (Resp., ¶ 9 at 20; ¶ 10 at 28.) He concedes he was placed on two separate performance plans during his employment with Defendant. *Id.*, ¶ 30 at 24; ¶ 56 at 59-60. He also admits misusing his corporate credit card on fourteen separate occasions to charge personal expenses totaling $1659.15 (Resp., ¶ 30 at 24; D. 38-1 at 135-39), while initially informing his supervisor he only used the card on "two or three occasions" due to error or emergency situations. (D. 38-2 at 25). Plaintiff also earned subpar reviews on performance evaluations, *id.* at 37, 41-42, 52-53; received critical feedback from an operations manager that the

monthly meetings he coordinated were unorganized (Resp., ¶ 69 at 24-25); and missed a pre-arranged customer tour and part of a class to attend a Donuts and Dads event at his daughter's school (D. 38-1 at 65), which he failed to mention to his supervisor when she asked why he was absent from the event (D. 66 at 28). Multiple employees and non-supervising managers also complained about Plaintiff's behavior or performance. (D. 38-1, pp. 193-94 at 37; 38-6 at 11-17.) Plaintiff simply cannot survive summary judgment on this record.

### B. Plaintiff Fails to Identify Similarly Situated Employees

Even assuming Plaintiff was meeting Defendant's legitimate expectations at the time of his termination, he fails to demonstrate there were similarly situated employees outside of his protected class that were treated more favorably. In order to defeat summary judgment, Plaintiff must identify comparators who "dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Gates*, 513 F.3d at 690 (quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000), *overruled on other grounds by Ortiz*, 834 F.3d at 765.); *Eaton v. Ind. Dep't of Corrs.*, 657 F.3d 551, 559 (7th Cir. 2011) (reiterating a similarly situated employee must be comparable to a plaintiff in all "material respects").

Plaintiff identifies two potential comparators, but he fails to reference evidence in the record which demonstrates they reported to the same supervisor or had engaged in similar conduct for which they were treated more favorably. (Resp. at 33-34, 87-88, 100-02). Although one of Plaintiff's comparators was promoted to a PSOR position, there is no evidence in the record the other was. (D. 38-1 at 72-73.) The record also fails to indicate—and Plaintiff fails to argue—that either comparator had similar issues with miscommunication or misconduct (e.g., credit card

9

misuse, dishonesty, negative performance feedback, etc.) as Plaintiff. *See Amrhein v. Health Care Serv. Corp.*, 546 F.3d 854, 860 (7th Cir. 2001) ("Without a similar disciplinary history, [the comparator] cannot be considered 'similarly situated.' "). Finally, Plaintiff fails to include any caselaw to support his argument that he has identified similarly situated employees. *Id.* at 100-02. This unsupported and undeveloped legal argument is insufficient to survive a motion for summary judgment, and the Court finds Plaintiff fails to meet the fourth prong of the *McDonnell Douglas* framework to proceed on his claim.

The legal standard in an employment-discrimination claim "is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, . . . or other proscribed factor caused the discharge." *Ortiz*, 834 F.3d at 765. The Court finds Plaintiff has failed to proffer evidence for a reasonable factfinder to conclude his race or national origin caused his discharge. He has failed to proffer sufficient evidence to demonstrate he was meeting Defendant's legitimate expectations at the time of his termination or to successfully refute Defendant's evidence to the contrary. He also failed to provide evidence that suitable comparators, outside of his protected class, were treated more favorably. Accordingly, Defendant's summary judgment motion on Plaintiff's claim of disparate treatment via unlawful termination is GRANTED.

**II.     Harassment**

Plaintiff argues he was subject to a hostile work environment because he was accused of lying on his job application; was told he was unqualified for his position due to his immigration status; was forced to submit meal receipts; and was accused of being argumentative and angry. (Resp. at 106.) To survive summary judgment on his hostile work environment claim, Plaintiff must demonstrate: (1) his work environment was both objectively and subjectively offensive; (2) the harassment complained of was based on his race or national origin; (3) the conduct was either

severe or pervasive; and (4) there is a basis for employer liability. *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840 (7th Cir. 2009). "Not every unpleasant workplace is a hostile environment . . . . The workplace that is actionable is the one that is hellish." *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1013 (7th Cir. 1997). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). None of Plaintiff's examples of misconduct rise to the level of actionable harassment, and Plaintiff's argument fails.

The incidents Plaintiff outlines fail to rise to the level of actionable harassment for several reasons. First, Plaintiff fails to indicate the context in which the comments were made or provide citations to the record to offer substantiation. Second, it appears two of the comments made to Plaintiff concerned his immigration status. (*See* Resp., ¶¶ (i),(ii) at 106.) Title VII does not offer protection for misconduct related to immigration status. *See Cortezano v. Salin Bank & Tr. Co.*, 680 F.3d 936, 940 (7th Cir. 2012) ("[N]ational origin discrimination as defined in Title VII encompasses discrimination based on one's ancestry, but not discrimination based on citizenship or immigration status."). Third, even if Plaintiff was protected, he fails to demonstrate the alleged isolated and offhand comments rose to the level of severe or pervasive harassment. Fourth, the fact Plaintiff was required to submit meal receipts appears reasonable due to the fact he had misused his corporate credit card and was placed on an ongoing performance plan due to his misuse. Finally, Plaintiff fails to provide any caselaw supporting his contention that offhand and unexplained comments combined with a reasonable request to hand in expense receipts constitutes actionable harassment. *Id.* at 106-07. Accordingly, Defendant's Motion for Summary Judgment on this claim of discrimination is GRANTED.

### III. Retaliation

Lastly, Plaintiff argues he was the subject of retaliation for filing an internal complaint which outlined his objections to the "discriminatory and malicious" nature of his second EAP. (Resp. at 107.) The retaliation, he contends, was a false termination, as he was terminated and sent home by his supervisor on August 13, 2015, and instructed by another official to return to work the next day. *Id.* To make out a claim of retaliation under Title VII, a plaintiff must show that: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between the two. *King v. Ford Motor Co.*, 872 F.3d 833, 841 (7th Cir. 2017). Here, Plaintiff fails to demonstrate his complaint constituted protected activity of which his supervisor had actual knowledge. As such, his final discrimination claim fails.

The Seventh Circuit has instructed:

> Although filing an official complaint with an employer may constitute statutorily protected activity under Title VII, the complaint must indicate the discrimination occurred because of sex, race, national origin, or some other protected class. Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient.

*Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006) (internal citation omitted.) After a thorough review of Plaintiff's internal complaint, the Court finds his complaint fails to indicate, or to even create an inference, that Plaintiff was the subject of discrimination for being black or for being born in a foreign country. (*See generally*, D. 38-2 at 59-87.)

Moreover, Plaintiff fails to demonstrate his supervisor was aware of his complaint when she allegedly terminated his employment and sent him home for the day. (*See Resp.* at 107-08.) Her actions would only constitute retaliation if she had actual knowledge of his complaint. *See Emerson v. Dart*, 900 F.3d 469, 472 (7th Cir. 2018) ("[Defendants'] alleged misdeeds count as retaliation only if they had actual knowledge of the . . . grievance."). Accordingly, no reasonable

jury could conclude Plaintiff suffered retaliation due to his complaint, and Defendant's Motion on this ground is GRANTED.

## CONCLUSION

For the reasons stated herein, Defendant's [37] Motion for Summary Judgment is GRANTED in its entirety. The Clerk of Court is directed to close this case.


Entered on October 22, 2019.

/s/ Michael M. Mihm
Michael M. Mihm
United States District Judge